IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY AND CHEVRON USA,<br><br>    Plaintiffs,<br><br>vs.<br><br>BKK CORPORATION, *et. al*,<br><br>    Defendants.<br>_____/ | CASE NO. 1:11-cv-1396 LJO-BAM<br><br>**FINDINGS AND RECOMMENDATIONS ON MOTIONS FOR GOOD FAITH SETTLEMENT**<br><br>(Docs. 57, 58, 59, 60, 61, 62, 64) |

## INTRODUCTION

Before the Court are Plaintiffs Chevron Environmental Management Company and Chevron USA's (collectively "Chevron") Motions for Good Settlement Determination. (Docs. 57, 58, 59, 60, 61, 62, 64). In six motions, Chevron requests approval of six individual settlement agreements reached with eight of the twenty-one named defendants: Marathon Oil, Husky Oil and Texas Oil & Gas Company (Doc. 57), Consolidated Fiber Glass Products (Doc. 58), Kern Backhoe Services, Inc., and KVS Transportation, Inc. (Doc. 59), Todd Shipyards Corporation and Todd Pacific Shipyards Corporation (Docs. 60, 64), Western Oilfields Supply Company (Doc. 61), and Valley Tree & Construction (Doc. 62) ("Settling Defendants").

On April 13, 2012, a hearing on the motion with all named defendants was held. Counsel Daniel Vineyard and Courtney Carlson appeared in person on behalf of Plaintiff Chevron. Counsel John Allen appeared in person on behalf of Defendants Burtch Trucking Inc., Crosby & Overton, Inc., L.W. Potter,

1  Inc., MP Vacuum Truck Service, Mosaic Global Holdings, Inc., and San Joaquin Refining Co.; Counsel
2  Eric Adair appeared in person on behalf of Defendants KVS Transportation, Inc., Kern Vacuum Service
3  Inc. and Kern Backhoe Service, Inc.; Counsel Don Fischbach appeared in person on behalf of
4  Defendants Western Oilfields Supply Company. Counsel Lauren Mishimura appeared by telephone on
5  behalf of Defendants BKK Corp.; Counsel Jeff McDonald appeared by telephone on behalf of
6  Consolidated Fiber Glass Products Co.; Counsel Rebecca Lloyd and Tuss Erickson appeared by
7  telephone on behalf of Ensign United States Drilling Inc.; Counsel Dennis O'Keefe appeared by
8  telephone on behalf of Golden Gate Petroleum Co.; Counsel Tramaine Singleton appeared by telephone
9  on behalf of Marathon Oil Co. and Texas Oil & Gas Corp.; Counsel Lee Smith appeared by telephone
10 on behalf of Ranchers Cotton Oil; Counsel Charles Blumenfeld appeared by telephone on behalf of
11 Todd Pacific Shipyards Corp.; Counsel Bernie Barmann appeared by telephone on behalf of Valley Tree
12 & Construction. Roger Draucker, appeared in person on behalf of Kern Front Se.-35 Partners in propria
13 persona. Representatives for Energy Production &Sales Co. and Petrominerals Corporation did not
14 appear.

For the reasons discussed below, this Court recommends that the Motions for Good Faith Settlement Determination should be GRANTED.

**BACKGROUND**

Chevron is the owner of EPC Eastside Disposal Facility (the "Site"), which is located on Round Mountain Road in Kern County, fifteen (15) miles northeast of Bakersfield, California. From approximately 1971 to 1985, the Site was operated as a waste disposal facility. During this time, the Site received millions of gallons of oil and non-oil waste that was later disposed of in unlined impoundments. After site testing, the State of California determined that clean-up of the Site was necessary.

As an effort to coordinate clean-up efforts with responsible parties, Chevron executed an Imminent and Substantial Endangerment Determination and Consent Order. The Remedial Action Plan for the Site was approved on February 1, 2008 by the Department of Toxic Substances Control. The Remedial Plan stemming from the Consent Order requires substantial remedial efforts, construction and long-term monitoring of the site. Chevron has paid and is currently paying the response costs associated with the investigation and cleanup of the EPC site.

On August 22, 2011, Chevron filed this cost recovery action under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601-9675; alleging CERCLA causes of action, as well as contribution and/or indemnity claims against a number of defendants in response to releases or threatened release of hazardous substances at the Site. Chevron Complaint, Doc. 1. In its Complaint, Chevron alleges that the total cost of clean-up exceeds $17,000,000 and that it is entitled to contribution and/or indemnity of the response costs from the named Defendants, as each are strictly, jointly and severally liable for all past and future response costs associated with the investigation and cleanup at the Site. Chevron Complaint at ¶ 41.

In October 2011, Chevron began settlement negotiations with the named Defendants in order to reduce the significant defense costs involved with this litigation as well as costs related to each Defendants' apportionment of joint and several liability. *See* Complaint at ¶¶ 31-42. The potential share of liability for each Defendant, and Chevron, was calculated by Chris Wittenbrink, President of CR Consulting, Inc., a management consulting firm that specializes in resolution of environmental disputes and litigation. *See* Wittenbrink Decl. at ¶¶ 1-2, Ex. 2, Doc. 57. The basis for Mr. Wittenbrink's calculations was the initial estimated amount of cleanup costs, $16,380,000. *See Id.* at ¶3. Mr. Wittenbrink subtracted the total amount of settlements received at the time of the calculation as well as the financial contribution made by the owner. *Id.* at ¶3. Mr. Wittenbrink created a formula for liability based on each transporters and each generator's relative share of oil and non-oil volumes, as shown in operational records and manifests. *Id.* at ¶ 4. He then allocated 10% of the unrecovered costs to the transporters and 90% to the generators and thereafter calculated the relative share according to the enumerated formula, taking into account the oil and non-oil related volumes, the toxicity premium, and a premium for avoidance costs and indemnity from Chevron. *Id.* at ¶¶3-6. Mr. Wittenbrink then assigned an approximate cost of clean-up for each Defendant, which Chevron used in its settlement negotiations.

Chevron has now reached settlement agreements with eight named defendants. The key terms of the six settlement agreements are, without admitting liability and with no admission of wrongdoing: (1) Chevron assumes any and all obligations that the Settling Defendants may have to conduct and pay all costs related to clean-up at the Site; (2) Chevron and the Settling Defendants agree to mutually

release existing or future claims related to clean up actions at the Site and Chevron further agrees to indemnify the Settling Defendants for costs incurred in connection to clean-up at the Site; and (3) the Settling Defendants agree not to sue any other potentially responsible parties who enter into similar settlement agreements with Chevron. EPC Eastside Disposal Settlement Agreement, Exh. 1, Doc. 64-1.

Chevron moves for an order approving that its settlement with the eight defendants is in good faith pursuant to California Code of Civil Procedure § 877.6.

## **LEGAL STANDARDS FOR GOOD FAITH SETTLEMENT**

A motion for good faith settlement arises under California Code of Civil Procedure § 877, which applies to federal court actions and authorizes the Court to determine whether a settlement agreement was entered into good faith. *See Slottow v. American Casualty Co. of Reading*, *Pennsylvania*, 10 F.3d 1355 (9th Cir. 1993) (en banc). In relevant part, the California law states,

> Where a release, dismissal with or without prejudice, or covenant not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:
>
> (a) It shall not discharge any such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it, whichever is greater.
>
> (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties.

Cal. Civ. Proc. Code § 877; *see also Rutgard v. Haynes*, 61 F.Supp.2d 1082, 1085 (S.D. Cal. 1999). The objectives of this legislation were "equitable sharing of costs among the parties at fault, and . . . encouragement of settlements." *River Garden Farms, Inc. v. Superior Court*, 26 Cal.App.3d 986, 993 (1972). However, "equitable sharing" does not require equal sharing. *Id.*

The California Supreme Court stated, "the good faith provision of section 877 mandates that the courts review agreements purportedly made under its aegis to insure that such settlements appropriately balance the contribution statute's dual objectives." *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488 (Cal. 1985). In the determination of good faith, factors to be considered include:

> (1) a rough approximation of plaintiff's total recovery and the settler's proportionate liability; (2) the amount paid in settlement; (3) a recognition that a settler should pay less in settlement than if found liable after trial; (4) the allocation of the settlement proceeds; (5) the settling party's financial condition and the availability of insurance; and (6)

> evidence of any collusion, fraud or tortious conduct between the settler and the plaintiff aimed at requiring the non-settling parties to pay more than their fair share.

*Id.* at 166. The burden of proof lies on a party opposing a motion for good faith settlement to establish a lack of good faith. *Id.* at 167; *see also* Cal. Civ. Proc. Code §877.6(d). An opposing party "must demonstrate . . . that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." *Id.* at 499-500. The determination as to whether a settlement is made in good faith is a matter of the Court's discretion. *Id.* at 502.

## TERMS OF THE SIX SETTLEMENTS

**1.  Marathon Oil, Husky Oil, and Texas Oil & Gas Corporation Settlement (Doc. 57)**

Marathon Oil, Husky Oil, and Texas Oil & Gas Corporation (collectively "Marathon") have agreed to pay a total of $494,616.14 to settle Chevron's claims. This represents approximately 2.9% of the $16,830,000 in total clean-up costs. Wittenbrink Decl. at ¶ 3. As calculated by Mr. Wittenbrink, Marathon is likely responsible for at least $596,907.76 in estimated clean-up costs. Wittenbrink Decl. at 6. Thus, the settlement amount is within the ballpark of Marathon's alleged proportionate liability. The proposed settlements with Marathon were reached after extensive settlement negotiations. Chevron and Marathon negotiated the settlement for approximately three months. During the negotiation period, Chevron communicated with Marathon's counsel no less than threes (3) times via telephone and exchanged no less than six (6) emails and one (1) letter regarding settlement. Marathon represents that it does not oppose the motion for good faith settlement. Carlson Decl. at ¶ 5, Doc. 57-3.

**2.  Consolidated Fiber Glass Products Company ("CONGLAS") (Doc. 58)**

Consolidated Fiber Glass Products Company ("CONGLAS") has agreed to pay $64,678.96 to settle all of Chevron's claims as to CONGLAS. This represents approximately 0.4% of the estimated $16,830,000 in total clean up costs. Wittenbrink Decl. at 3, Doc. 58 at 11. As calculated by Mr. Wittenbrink, CONGLAS is likely responsible for at least $64,678.96 in estimated clean-up costs. Wittenbrink Decl. at 6. Thus, the settlement amount is proportionate to CONGLAS' alleged liability. The proposed settlement with CONGLAS was reached after extensive settlement negotiations. Chevron and CONGLAS negotiated the settlement for approximately one (1) month. During that time period, the parties communicated no less than two (2) times via telephone and exchanged no less than three (3) emails and two (2) letters regarding settlement. CONGLAS represents that it does not oppose the

1  motion for good faith settlement. Carlson Decl. at ¶ 5, Doc. 58-3

2  **3.     Kern Backhoe Service, Inc. and KVS Transportation, Inc. Settlement (Doc. 59)**

Kern Backhoe Service, Inc. and KVS Transportation, Inc. (collectively "KERN") have agreed to pay $208,592.71 to settle all of Chevron's claims as to each party. This represents approximately 1.2% of the estimated $16,830,000 in total clean up costs. Wittenbrink Decl. at 3, Doc. 59 at 11. As calculated by Mr. Wittenbrink, KERN is likely responsible for at least $209,236.22 in estimated clean-up costs. Wittenbrink Decl. at 8. Thus, the settlement amount is within the ballpark of Kern's alleged proportionate liability. The proposed settlement with KERN was reached after extensive settlement negotiations. Chevron and KERN negotiated the settlement for approximately four (4) months. During that time period, the parties communicated no less than five (5) times via telephone and exchanged no less than twenty (20) emails, and three (3) letters regarding settlement. KERN represents that it does not oppose the motion for good faith settlement. Carlson Decl. at ¶ 5, Doc. 59-3.

**4.     Todd Shipyards Corporation and Todd Pacific Shipyards Corporation Settlement (Doc. 60, 64).**

Todd Shipyards Corporation and Todd Pacific Shipyards Corporation (collectively "TODD") have agreed to pay $185,000.00 to settle all of Chevron's claims as to TODD. This represents approximately 1.1% of the $16,830,000 in total clean up costs. Wittenbrink Decl. at 3 Doc. 60 at 11. As calculated by Mr. Wittenbrink, TODD is likely responsible for at least $205,602.88 in estimated clean-up costs. Wittenbrink Decl. at 8. Thus, the settlement amount is within the ballpark of TODD's alleged proportionate liability. The proposed settlement with TODD was reached after extensive settlement negotiations. Chevron and TODD negotiated the settlement for approximately two (2) months. During that time period, the parties communicated no less than two (2) times via telephone and exchanged no less than four (4) emails, and two (2) letters regarding settlement. TODD represents that it does not oppose the motion. Carlson Decl. at ¶ 5, Doc. 60-3, 64-3.

**5.     Western Oilfields Supply Company Settlement (Doc. 61).**

Western Oilfields Supply Company ("WESCO") has agreed to pay $21,495.06 to settle all of Chevron's claims as to WESCO. Wittenbrink Decl. at 3, Doc. 61 at 11. As calculated by Mr. Wittenbrink, WESCO is likely responsible for at least $21,495.06 in estimated clean-up costs.

Wittenbrink Decl. at 8. Thus, the settlement amount is within the ballpark of WESCO's alleged proportionate liability. The proposed settlement with WESCO was reached after extensive settlement negotiations. Chevron and WESCO negotiated the settlement for approximately three (3) months. During that time period, the parties communicated no less than two (2) times via telephone and exchanged no less than three (3) emails and four (4) letters regarding settlement. WESCO represents that it does not oppose the motion. Carlson Decl. at ¶ 5, Doc. 58-3.

**6.    Valley Tree & Construction Settlement (Doc. 62).**

Valley Tree & Construction ("Valley Tree") has agreed to pay $20,000.00 to settle all of Chevron's claims as to Valley Tree. This represents approximately 0.1% of the $16,830,000 in total clean up costs. Wittenbrink Decl. at 3, Doc. 62 at 11. As calculated by Mr. Wittenbrink, Valley Tree is likely responsible for at least $26,794.89 in estimated clean-up costs. Wittenbrink Decl. at 8. Thus, the settlement amount is within the ballpark of Valley Tree's alleged proportionate liability. The proposed settlement with Valley Tree was reached after extensive settlement negotiations. Chevron and Valley Tree negotiated the settlement for approximately three (3) months. During that time period, the parties communicated no less than three (3) times via telephone and exchanged no less than ten (10) emails and two (2) letters regarding settlement. Chevron forwarded the instant motion to Valley Tree, but Valley Tree did not state whether it opposes the motion, and the time to do so has expired. Carlson Decl. at ¶ 5, Doc. 58-3.

**DISCUSSION**

The Court has reviewed the motions for good faith settlement with their supporting declarations, the *Tech-Bilt* factors, and the lack of opposition. The Court concludes that the individual settlement agreements qualify as good faith settlements under Cal. Civ. Proc. Code § 877.6. All of the motions, the accompanying settlement amounts, and the supporting declarations were served on all named Defendants. All parties, settling or otherwise, have now had an adequate opportunity to perform a complete analysis of the settlement agreements and express any objections or opposition. At the hearing on the motions for good faith settlement, no party objected to any of the settlements. Significantly, the motions are unopposed, and no party has demonstrated the settlement agreements are unreasonable or inconsistent with the equitable objectives of Cal. Civ. Proc. Code §877.6. Further, no party has objected

to the formula or calculations by Mr. Wittenbrink to determine the basis of liability for the Settling Defendants.

Accordingly, the *Tech-Bilt* factors weigh in favor of granting Chevron's motions for good faith settlement determination. The settlements were initiated during arms-length, informed, and independent settlement negotiations. The settlement agreements were reached early in the litigation, with informed and sophisticated counsel, and cut-off additional costs of discovery, motions, and trial preparation as to each Settling Defendant. Moreover, based on the unopposed calculations and the formulas prepared by Mr. Wittenbrink, each settlement is within the reasonable range of each Settling Defendant's proportional share of comparative liability. Finally, no evidence suggests that the settlement agreements are a result of collusion, fraud, or tortious conduct. To the contrary, Chevron informed all of the Defendants of the proposed settlements and no oppositions have been filed. Accordingly, the settlement agreements are a culmination of good faith negotiations, and no evidence has been presented to show the amounts of settlement or any other matter in connection with the settlement is aimed at harming the non-settling defendants.

**FINDINGS AND RECOMMENDATIONS**

For the reasons discussed above, this Court **RECOMMENDS**, that

1. Chevron's settlement with Marathon Oil, Husky Oil, and Texas Oil & Gas Corporation (Doc. 57) should be **GRANTED** as entered into in good faith within the meaning of California Code of Civil Procedure section 877.6 and therefore any and all claims for equitable comparative contribution, and partial and complete comparative indemnity, based on comparative negligence or comparative fault, against Marathon Oil, Husky Oil, and Texas Oil & Gas Corporation be forever barred pursuant to California Code of Civil Procedure §877.6(c).

2. Chevron's settlement with Consolidated Fiber Glass Products Company (Doc. 58) should be **GRANTED** as entered into in good faith within the meaning of California Code of Civil Procedure section 877.6 and therefore any and all claims for equitable comparative contribution, and partial and complete comparative indemnity, based on comparative negligence or comparative fault, against Consolidated Fiber Glass Products Company be forever barred pursuant to California Code of Civil Procedure §877.6(c).

3. Chevron's settlement with Kern Backhoe Service, Inc. and KVS Transportation, Inc. (Doc. 59) should be **GRANTED** as entered into in good faith within the meaning of California Code of Civil Procedure section 877.6 and therefore any and all claims for equitable comparative contribution, and partial and complete comparative indemnity, based on comparative negligence or comparative fault, against Kern Backhoe Service, Inc. and KVS Transportation, Inc. be forever barred pursuant to California Code of Civil Procedure §877.6(c).

4. Chevron's settlement with Todd Shipyards Corporation and Todd Pacific Shipyards Corporation (Doc. 60, 64) should be **GRANTED** as entered into in good faith within the meaning of California Code of Civil Procedure section 877.6 and therefore any and all claims for equitable comparative contribution, and partial and complete comparative indemnity, based on comparative negligence or comparative fault, against Todd Shipyards Corporation and Todd Pacific Shipyards Corporation be forever barred pursuant to California Code of Civil Procedure §877.6(c).

5. Chevron's settlement with Western Oilfields Supply Company (Doc. 61) should be **GRANTED** as entered into in good faith within the meaning of California Code of Civil Procedure section 877.6 and therefore any and all claims for equitable comparative contribution, and partial and complete comparative indemnity, based on comparative negligence or comparative fault, against Western Oilfields Supply Company be forever barred pursuant to California Code of Civil Procedure §877.6(c).

6. Chevron's settlement with Valley Tree & Construction (Doc. 62) should be **GRANTED** as entered into in good faith within the meaning of California Code of Civil Procedure section 877.6 and therefore any and all claims for equitable comparative contribution, and partial and complete comparative indemnity, based on comparative negligence or comparative fault, against Valley Tree & Construction be forever barred pursuant to California Code of Civil Procedure §877.6(c).

7. Counsel for Chevron is **DIRECTED** to serve a copy of this Order on all named defendants.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of

Practice for the United States District Court, Eastern District of California. Within fifteen (15) days after being served with these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: April 16, 2012       /s/ Barbara A. McAuliffe
                            UNITED STATES MAGISTRATE JUDGE