1

2

3

4

5

6

7

8           **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11

CHEVRON ENVIRONMENTAL                    CASE NO. CV F 11-1396 LJO BAM
12  MANAGEMENT COMPANY, et al.,
                                         **ORDER ON DEFENDANTS' F.R.Civ.P. 12**
13              Plaintiff,                **MOTION TO DISMISS**
                                         (Doc. 78.)
14      vs.

15  BKK CORPORATION, et al.,

16              Defendants.

17  _____/

18                              **INTRODUCTION**

19       Several defendants[1] seek to dismiss as lacking legal basis plaintiffs Chevron Environmental

20  Management Company and Chevron U.S.A., Inc.'s (collectively "Chevron's") claims that defendants

21  are jointly and severally liable for Chevron's uncompensated costs to remediate release of hazardous

22  substances at a Kern County site.  Chevron responds that it properly seeks recovery of its costs to

23  remediate the site under the Comprehensive Environmental Response, Compensation and Liability Act

24  ("CERCLA"), 42 U.S.C. §§ 9601, et seq. This Court considered defendants' F.R.Civ.P. 12(b)(6) motion

25  to dismiss on the record and VACATES the July 24, 2012 hearing, pursuant to Local Rule 230(g).  For

26  _____

27       [1]      The defendants seeking F.R.Civ.P. 12(b)(6) relief are Burtch Trucking, Inc., Crosby & Overton, Inc.,
    Ensign United States Drilling (California), Inc., L.W. Potter, Inc., Mosaic Global Holdings, Inc., MP Vacuum Truck Service,
28  and San Joaquin Refining Co. and will be referred to collectively as "defendants."

                                         1

1  the reasons discussed below, this Court DENIES defendants' requested F.R.Civ.P. 12(b)(6) relief.

2  **BACKGROUND**[2]

3  **Summary**

4  The complaint alleges against defendants claims under CERCLA for declaratory relief and to

5  recover Chevron's costs to respond to release of hazardous substances at the EPC Eastside Disposal

6  Facility ("EPC site") outside of Bakersfield.  Chevron has taken the lead to clean up the EPC site and

7  has settled with 395 companies and individuals to contribute to clean up costs.  Defendants have not

8  settled with Chevron and contend that Chevron wrongly pursues CERCLA claims to punish defendants

9  with joint and several liability for all response costs.  Chevron contends that defendants mischaracterize

10  Chevron's claims and aims in this action.

11  **EPC Site Clean Up**

12  The EPC site is a landfill which operated as a waste disposal facility during 1971-1985 and

13  received millions of gallons of wastes.  In the 1990s, the State of California contacted parties, including

14  Chevron and several defendants, which it considered responsible for the release of hazardous substances

15  at the EPC site.  Some of those parties voluntarily incurred costs to investigate and clean up the EPC site

16  with Chevron agreeing to take the lead.

17  The California Department of Toxic Substances Control ("DTSC") and Chevron entered into a

18  June 2005 Imminent and Substantial Endangerment Determination and Consent Order ("consent order")

19  by which Chevron committed to spearhead EPC site clean up.  The consent order identifies Chevron as

20  a party "who arranged for the disposal of hazardous substances at the Site, and is responsible under the

21  applicable state and federal laws for the investigation and remediation of the release or threatened release

22  of hazardous substances into the environment at or from the Site."  Chevron agreed to develop and

23  implement a remedial action plan ("RAP") to address hazardous substances release at the EPC site.

24  The consent order addresses Chevron's "liabilities" and provides: "Nothing in this Order shall

25  constitute or be construed as a satisfaction or release from liability for any conditions or claims arising

26  as a result or past, current or future operations of [Chevron]."

27

28  [2]    The factual recitation is derived generally from Chevron's Complaint ("complaint"), the target of defendants' attacks, as well as other matters which this Court may consider on a F.R.Civ.P. 12(b)(6) motion to dismiss.

On February 1, 2008, DTSC approved the RAP to require long-term monitoring of the EPC site. Remedial efforts will be "substantial" and will require movement of thousands of cubic yards of soil, monitoring of surface emissions, groundwater and surface water, annual inspections, and potential demolishing of buildings and structures.

### Chevron's Claims

The complaint's (first) contribution claim under 42 U.S.C. § 9607(a)[3] seeks to hold defendants "jointly and severally liable to Chevron for all response costs incurred, and to be incurred, by Chevron in connection with the EPC Site."   The complaint's (second) section 9613(g)(2) claim seeks "a declaratory judgment that all Defendants are jointly and severally liable for any further costs incurred in response to the release of hazardous substances at the EPC Site."[4]  Chevron contends that it seeks to recover from defendants "all necessary costs of response it has incurred and will incur consistent with the national contingency plan."

### DISCUSSION
### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Defendants challenge the complaint's CERCLA claims in that "no court has construed CERCLA as authorizing any person or entity in Chevron's position [as a consent order party] to impose joint-and-several liability for cost recovery on others also allegedly liable under CERCLA as responsible parties." Defendants conclude that the complaint "asserts no basis to seek recovery of all response costs incurred, let alone to do so on a joint-and-several basis against Defendants."

Chevron responds that section 9607 is the appropriate vehicle to pursue its claims in that it "has spent its own money to clean up" the EPC site.  Chevron contends that a section 9613 contribution action is inapplicable because Chevron has neither been sued under CERCLA nor entered into a settlement to resolve is liability to the United States or a state for a response action.

"When a federal court reviews the sufficiency of a complaint, before the reception of any

---

[3]    Unless otherwise noted, all further statutory references will be to CERCLA, United States Code, Title 42.

[4]    The complaint's third claim alleges that defendants are liable for clean up costs under the California Hazardous Substances Account Act ("HSAA"), California Health & Safety Code, §§ 25300-25395.45.  Defendants do not address directly the HSAA claim and appear to take the position that they are not subject to HSAA liability in absence of derivative CERCLA liability.  *See* Cal. Health & Saf. Code, § 25323.5(a)(1).

1   evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether

2   a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

3   claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development

4   Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either

5   a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

6   theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of

7   Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency

8   of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

9   In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to

10  the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff

11  can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80

12  F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that

13  are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead

14  Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not

15  assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v.

16  Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can prove

17  facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been

18  alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*,

19  459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that

20  the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney,

21  Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

22  A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires

23  more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

24  do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations

25  omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most

26  favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan

27  Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain

28  either direct or inferential allegations respecting all the material elements necessary to sustain recovery

4

1  under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers,*
2  *Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

3       In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court
4  explained:

5           . . . a complaint must contain sufficient factual matter, accepted as true, to "state
       a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the
6       plaintiff pleads factual content that allows the court to draw the reasonable inference that
       the defendant is liable for the misconduct alleged. . . . The plausibility standard is not
7       akin to a "probability requirement," but it asks for more than a sheer possibility that a
       defendant has acted unlawfully.  (Citations omitted.)
8

9       After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive
10 [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be
11 plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d
12 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

13      The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

14          First, the tenet that a court must accept as true all of the allegations contained in
       a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
15      a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second,
       only a complaint that states a plausible claim for relief survives a motion to dismiss. . .
16      . Determining whether a complaint states a plausible claim for relief will . . . be a
       context-specific task that requires the reviewing court to draw on its judicial experience
17      and common sense. . . . But where the well-pleaded facts do not permit the court to infer
       more than the mere possibility of misconduct, the complaint has alleged – but it has not
18      "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

19          In keeping with these principles a court considering a motion to dismiss can
       choose to begin by identifying pleadings that, because they are no more than conclusions,
20      are not entitled to the assumption of truth. While legal conclusions can provide the
       framework of a complaint, they must be supported by factual allegations. When there are
21      well-pleaded factual allegations, a court should assume their veracity and then determine
       whether they plausibly give rise to an entitlement to relief.
22

23 *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

24      Moreover, a court may consider exhibits submitted with the complaint. *Durning v. First Boston*
25 *Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987);*Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162,
26 n. 2 (C.D. Cal. 2003).   A "court may consider evidence on which the complaint 'necessarily relies' if:
27 (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no
28 party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d

445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[5] A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).

With these standards in mind, this Court turns to defendants' challenges to the complaint's CERCLA claims.

## CERCLA Liability

CERCLA was enacted in 1980 to provide effective responses to health and environmental threats posed by hazardous waste sites. *United States v. Burlington Northern & Santa Fe Ry. Co.*, 502 F.3d 781, 792 (9th Cir. 2007), *reversed on other grounds*, 556 U.S. 599, 129 S.Ct. 1870 (2009). Under CERCLA, federal and state governments may initiate cleanup of toxic areas and sue potentially responsible parties ("PRPs") for reimbursement. *Burlington Northern*, 502 F.3d at 792. A key CERCLA purpose is to shift "the cost of cleaning up environmental harm from the taxpayers to the parties who benefitted from the disposal of the wastes that caused the harm." *EPA v. Sequa Corp. (In the Matter of Bell Petroleum Servs., Inc.)*, 3 F.3d 889, 897 (5th Cir. 1993).

Section 9607(a) authorizes cost recovery claims and establishes that arrangers and transporters of hazardous substances for disposal "shall be responsible for" remedial costs incurred by the federal or a statement government and "any other necessary costs of response incurred by any other person consistent with the national contingency plan." Section 9613(f)(1) authorizes contribution claims:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall

---

[5] "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

1    be brought in accordance with this section and the Federal Rules of Civil Procedure, and
     shall be governed by Federal law. In resolving contribution claims, the court may allocate
2    response costs among liable parties using such equitable factors as the court determines
     are appropriate.
3

4        Section 9613(f)(3)(B) entitles a party settling with a state government to pursue contribution

5    claims: "A person who has resolved its liability to the United States or a State for some or all of a

6    response action or for some or all of the costs of such action in an administrative or judicially approved

7    settlement may seek contribution from any person who is not party to a settlement" which was approved

8    administratively or judicially.

9        Although section 9607 creates the right of contribution, the "machinery" of section 9613

10   "governs and regulates such actions, providing the details and explicit recognition that were missing"

11   from section 9607. *Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1302 (9th Cir. 1997),

12   *cert. denied*, 524 U.S. 937, 118 S.Ct. 2340 (1998).  A significant distinction between section 9607 cost

13   recovery claims and 9613 contribution claims is that a defendant in a section 9607 cost recovery action

14   will be held jointly and severally liable for all response costs unless it can show there is a reasonable

15   basis for apportionment, while a defendant in a § 9613(f) contribution action is liable only for its

16   equitable share of those costs. *See Burlington Northern*, 556 U.S. 599, 129 S.Ct. 1870, 1880-1881.

17       In *U.S. v. Atlantic Research Corp.*, 551 U.S. 128, 139, 127 S.Ct. 2331 (2007), the U.S. Supreme

18   Court further distinguished section 9607 and 9613 claims:

19           Accordingly, the remedies available in §§ 107(a) [section 9607(a)] and 113(f)
         [section 9613(f)] complement each other by providing causes of action "to persons in
20       different procedural circumstances." . . . Section 113(f)(1) authorizes a contribution
         action to PRPs with common liability stemming from an action instituted under § 106
21       or § 107(a). And **§ 107(a) permits cost recovery (as distinct from contribution) by a
         private party that has itself incurred cleanup costs.** Hence, a PRP that pays money to
22       satisfy a settlement agreement or a court judgment may pursue § 113(f) contribution. But
         by reimbursing response costs paid by other parties, the PRP has not incurred its own
23       costs of response and therefore cannot recover under § 107(a). As a result, though
         eligible to seek contribution under § 113(f)(1), the PRP cannot simultaneously seek to
24       recover the same expenses under § 107(a).  (Bold added.)

25       Defendants argue that section 9607(a) relief is not available when a responsible party directly

26   incurs "compelled" cleanup costs under a settlement with a government agency.    Section 9613(f)

27   "provides the exclusive remedy for a liable party compelled to incur response costs pursuant to an

28   administrative or judicially approved settlement" under section 9606 or section 9607.  *Morrison*

7

1    *Enterprises, LLC v. Dravo Corp.*, 638 F.3d 594, 603 (8th Cir.), *cert. denied*, __ U.S. __, 132 S.Ct. 244

2    (2011); *see ITT Indus., Inc. v. BorgWarner, Inc.,* 506 F.3d 452, 458 (6th Cir.2007) (parties "who have

3    entered into a judicially or administratively approved settlement must seek contribution" under section

4    9613(f)); *see also Atlantic Research*, 551 U.S. at 139, n. 6, 127 S.Ct. 2331 ("costs of reimbursement to

5    another person pursuant to a legal judgment or settlement are recoverable only under § 113(f)").

6    Defendants point to *Stimson Lumber Co. v. Int'l Paper Co.*, 2011 U.S. Dist. Lexis 43782 (D.

7    Mont. 2011), where the district court addressed whether a PRP "who incurs costs in performing a

8    cleanup pursuant to an administrative settlement is limited to a contribution remedy under § 113(f) or

9    is entitled to also seek cost recovery under § 107(a)." *Stimson*, 2011 U.S. Dist. Lexis 43782, at *44.  In

10   holding that such a PRP is limited to section 9613(f) contribution, the district court noted that the "vast

11   majority" of courts addressing the issue have held that section 9607 "is not an available remedy when

12   a PRP directly incurs 'compelled' cleanup costs pursuant to a consent decree or settlement agreement

13   with a governmental agency.  *See e.g. Agere Systems, Inc. v. Advanced Environmental Technology*

14   *Corp.*, 602 F.3d 204, 227-28 (3d Cir. 2010); *Niagara Mohawk Power Corp. v. Chevron USA, Inc.*, 596

15   F.3d 112, 124 (2d Cir. 2010); *Solutia, Inc. v. McWane, Inc.*, 726 F. Supp. 2d 1316, (N.D. Ala. 2010)."

16   *Stimson*, 2011 U.S. Dist. Lexis 43782, at *45.

17   Defendants note Chevron's acknowledgment that Chevron's response costs were solely the result

18   of Chevron's entering the consent order in that the complaint alleges that Chevron took "the lead in

19   cleaning up the EPC Site" after the consent order identified Chevron as a responsible party.  Defendants

20   point to the consent order's penalties provision that Chevron "may be liable for penalties of up to

21   $25,000 for each day out of compliance with any term or condition set forth in this Order" to argue such

22   potential penalties render Chevron's clean up compulsory.

23   Defendants accuse Chevron of attempting "to gain leverage over Defendants in forcing them to

24   accept settlements as opposed to bearing the risk of joint-and-several liability." Defendants characterize

25   themselves as "smaller responsible parties" and contend that the complaint "frustrate[s] CERCLA's

26   intent that polluters pay for costs associated with releases for which they are responsible" in that

27   Chevron seeks to recover its full costs under section 9607 rather than "an equitable share from each

28   Defendant."

1    Chevron responds that under *Atlantic Research*, its section 9607 claim is appropriate because

2    Chevron "itself incurred response costs and has not been sued or settled its liability."  Chevron accuses

3    defendants of mischaracterizing the consent decree as a settlement with DTSC.  Chevron notes that the

4    consent decree is not a settlement in that, pursuant to its terms, the consent decree is not "a satisfaction

5    or release from liability for any conditions or claims arising as a result of past, current or future

6    operations" of Chevron.

7    Under the complaint's alleged facts, Chevron's analysis of application of sections 9607 and

8    9613(f) is correct.  There are no allegations that Chevron has been sued under 9606 or 9607(a) and has

9    settled such liability to give rise to a section 9613(f) claim.  The complaint alleges that "Chevron agreed

10   to take the lead in cleaning up the EPC Site" and "has incurred costs in connection with taking those

11   response actions."  The complaint raises no less than inferences that Chevron has voluntarily incurred

12   response costs.

13   Defendants point to nothing definitive that Chevron has been released from liability to limit it

14   to a section 9613(f) contribution claim.  By its terms, the consent decree is not "a satisfaction or release

15   from liability for any conditions or claims arising as a result of past, current or future operations" of

16   Chevron.  Chevron is correct that defendants have "mischaracterized" its voluntary actions to initiate

17   clean up at the EPC site.  Moreover, the consent decree's potential penalties do not equate to Chevron's

18   involutary actions in that the penalties are discretionary.

19   "Under Atlantic Research, a PRP . . . that incurs costs voluntarily, without having been subject

20   to an action under § 106 or § 107, may bring a suit for recovery of its costs under § 107(a); a party in

21   such a position does not need a right to implied contribution under § 107. Any of the defendants sued

22   by such a PRP may seek contribution under § 113(f) because they now will have been subject to an

23   action under § 107."  *Kotrous v. Goss-Jewett Co. of Northern Cal.*, 523 F.3d 924, 933 (9th Cir. 2008).

24   "Cleanup costs incurred voluntarily and directly by a party are recoverable only under § 107(a)(4)(B),

25   even if the claimant is not entirely innocent under CERCLA."  *Solutia, Inc. v. McWane, Inc.*, 672 F.3d

26   1230, 1235 (11th Cir. 2012).

27   Chevron's purported leverage is offset by defendants' ability to pursue section 9613(f)

28   contribution claims.  A "defendant PRP in such a § 107(a) suit could blunt any inequitable distribution

9

1   of costs by filing a § 113(f) counterclaim." *Atlantic Research*, 551 U.S. at 140, 127 S.Ct. 2331.

2   Defendants' claims that Chevron overreaches are unavailing.

3        Moreover, in their reply papers, defendants misconstrue section 9613(f)(3)(B) by claiming a

4   contribution claim exists "even if the responsible party settled only a fraction of its liability." Section

5   9613(f)(3)(B) authorizes a contribution claim for a "person who has resolved **its liability** . . . for some

6   or all of a response action or for some of all of the costs of such action . . ." (Bold added.)  The

7   "fraction" refers to the "response action" and "costs," not to a party's partial liability.

8                                           **Declaratory Relief**

9        The complaint's second claim seeks declaratory relief that defendants "are jointly and severally

10  liable" for costs to remediate the EPC site.

11       Section 9613(g)(2) empowers a court to "enter a declaratory judgment on liability for response

12  costs or damages that will be binding on any subsequent action or actions to recover further response

13  costs or damages." "CERCLA expressly provides for declaratory actions for determining liability as to

14  future response costs." *In re Dant & Russell, Inc.*, 951 F.2d 246, 249 (9th Cir. 1991). "Indeed, our cases

15  make clear that so long as there has been a release of hazardous substances, and the plaintiff spends

16  some money responding to it, a claim for declaratory relief is ripe for review." *City of Colton v.

17  American Promotional Events, Inc.-West*, 614 F.3d 998, 1005 (9th Cir.), *cert. denied*, __ U.S. __,131

18  S.Ct. 646 (2010).

19       Defendants fault the declaratory relief claim in the absence of a valid section 9607 cost recovery

20  claim.  A section 9607(g)(2) declaratory relief claim fails "in the absence of a substantive cause of

21  action." *Union Station Associates, LLC. v. Puget Sound Energy, Inc.*, 238 F.Supp.2d 1226, 1230 (W.D.

22  Wash. 2002) ("Given that the Court granted partial summary judgment disposing of Union's § 107 claim

23  for cost recovery, and with this order dismisses Union's § 113(f) claim, no substantive federal claims

24  exist upon which to base Union's declaratory judgment claims"); *see Reichhold Chem., Inc. v. Textron,

25  Inc.*, 888 F.Supp. 1116, 1124 (N.D. Fla.1995) (dismissing declaratory judgment claim under section

26  9607(g)(2) after dismissal of section 9607 claim).

27       Defendants further argue that Chevron is not entitled to declaratory relief in the absence of

28  allegations that Chevron has incurred necessary response costs.  Defendants note that section 9613(g)(2)

                                                  10

1    permits declaratory relief to establish liability for future response costs in a section 9607 costs recovery

2    action.  Defendants assert that Chevron must first incur "necessary costs of response by any other person

3    consistent with the national contingency plan" under section 9607(a)(4)(B).  Sections 9607 and 9613

4    "envision that, before suing, CERCLA plaintiffs will spend some money responding to an environmental

5    hazard. They can then go to court and obtain reimbursement for their initial outlays, as well as a

6    declaration that the responsible party will have continuing liability for the cost of finishing the job." *In*

7    *re Dant & Russell, Inc.*, 951 F.2d at 249-250.

8           Chevron responds that it may pursue section 9316(g)(2) declaratory relief based on the

9    complaint's adequately pled section 9607 claim that Chevron has incurred necessary response costs and

10   has not settled its liability.

11          Again, Chevron is correct.  Given that the section 9607 claim continues, Chevron may pursue

12   section 9316(g)(2) relief.  The section 9607 claim remains as substantive to support declaratory relief.

13   As noted above, the complaint alleges that Chevron has taken the lead to clean up the EPC site and "has

14   incurred costs in connection with taking those 'response' actions."  The complaint's section 9316(g)(2)

15   claim remains viable.

16                                   **CONCLUSION AND ORDER**

17          For the reasons discussed above, this Court:

18   1.     DENIES defendants' requested F.R.Civ.P. 12(b)(6) relief; and

19   2.     ORDERS defendants, no later than August 3, 2012, to file and serve an answer to the

20          complaint.

21          IT IS SO ORDERED.

22   **Dated:    July 19, 2012**                     **/s/ Lawrence J. O'Neill**
                                                     UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28

11