IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY AND CHEVRON USA,<br><br>    Plaintiffs,<br><br>vs.<br><br>BKK CORPORATION, *et. al*,<br><br>    Defendants.<br>_____ / | CASE NO. 1:11-cv-1396 LJO-BAM<br><br>**FINDINGS AND RECOMMENDATIONS ON APPROVING SETTLEMENT AGREEMENT AND DISMISSING DEFENDANT WITH PREJUDICE**<br><br>(Doc. 137). |

**INTRODUCTION**

Before the Court is Plaintiffs Chevron Environmental Management Company and Chevron USA's (collectively "Chevron") Motion for Good Settlement Determination. (Doc. 137). In this Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") action, Chevron moves for a good faith settlement determination pursuant to California Code of Civil Procedure Section 877.6 with Defendant Burtch Trucking Inc. d/b/a Burtch Construction. ("Burtch Trucking" or "Settling Party"). (Doc. 137). On March 1, 2013, a hearing on the motion was held. Counsel Courtney Carlson appeared by telephone on behalf of Plaintiffs Chevron. Counsel John Allen appeared by

telephone for Defendants Burtch Trucking Inc., L.W. Potter Inc., MP Vacuum Truck Service, Ensign United States Drilling Inc., and San Joaquin Refining Co. For the reasons discussed below, this Court recommends that Chevron's Motion for Good Faith Settlement Determination should be GRANTED.

## BACKGROUND

Chevron is the owner of EPC Eastside Disposal Facility (the "Site"), which is located on Round Mountain Road in Kern County, fifteen (15) miles northeast of Bakersfield, California. Pl.'s Complaint at ¶ 1, Doc. 1. From approximately 1971 to 1985, the Site was operated as a waste disposal facility. During this time, the Site received millions of gallons of oil and non-oil waste that was later disposed of in unlined impoundments. After site testing, the State of California determined that clean-up of the Site was necessary.

As an effort to coordinate clean-up efforts with responsible parties, Chevron executed an Imminent and Substantial Endangerment Determination and Consent Order. The Remedial Action Plan for the Site was approved on February 1, 2008 by the Department of Toxic Substances Control. The Remedial Plan stemming from the Consent Order requires substantial remedial efforts, construction and long-term monitoring of the site. Chevron has paid and is currently paying the response costs associated with the investigation and cleanup of the EPC site.

On August 22, 2011, Chevron filed this cost recovery action under the CERCLA, 42 U.S.C. §§ 9601-9675; alleging CERCLA causes of action, as well as contribution and/or indemnity claims against a number of defendants in response to releases or threatened release of hazardous substances at the Site. Complaint at ¶ 1. In its Complaint, Chevron alleges that the total cost of clean-up exceeds $17,000,000 and that it is entitled to contribution and/or indemnity of the response costs from the named Defendants, as each are strictly, jointly and severally liable for all past and future response costs associated with the investigation and cleanup at the Site. Complaint at ¶ 41.

In October 2011, Chevron began settlement negotiations with the named Defendants in order to reduce the significant defense costs involved with this litigation as well as costs related to each Defendants' apportionment of joint and several liability. *See* Complaint at ¶¶ 31-42. The potential share of liability for each Defendant, and Chevron, was calculated by Chris Wittenbrink, President of CR Consulting, Inc., a management consulting firm that specializes in resolution of environmental disputes

and litigation. *See* Wittenbrink Decl. at ¶¶ 1-2, Ex. 2, Doc. 107. The basis for Mr. Wittenbrink's calculations was the initial estimated amount of cleanup costs, $16,830,000. *See Id.* at ¶3. Mr. Wittenbrink subtracted the total amount of settlements received at the time of the calculation, $3,883,445.00, as well as the financial contribution made by the owner, $1,910,138.00. *Id.* at ¶3. Mr. Wittenbrink created a formula for liability based on each transporter's and each generator's relative share of oil and non-oil volumes, as shown in operational records and manifests. *Id.* at ¶ 4. He then allocated 10% of the unrecovered costs to the transporters and 90% to the generators and thereafter calculated the relative share according to the enumerated formula, taking into account the oil and non-oil related volumes, the toxicity premium, and a premium for avoidance costs and indemnity from Chevron. *Id.* at ¶¶ 3-6. Mr. Wittenbrink then assigned an approximate cost of clean-up for each Defendant, which Chevron used in its settlement negotiations.

Chevron has now reached a settlement agreement with Defendant Burtch Trucking. The key terms of the settlement agreement are, without admitting liability and with no admission of wrongdoing: (1) Chevron assumes any and all obligations that the Settling Party may have to conduct and pay all costs related to clean-up at the Site; (2) Chevron and the Settling Party agree to mutually release existing or future claims related to clean up actions at the Site and Chevron further agrees to indemnify the Settling Party for costs incurred in connection to clean-up at the Site; and (3) the Settling Party agrees not to sue any other potentially responsible parties who enter into similar settlement agreements with Chevron. EPC Eastside Disposal Settlement Agreement, Exh. 1, Doc. 137-1.

Chevron moves for an order approving that its settlement with Burtch Trucking is in good faith pursuant to California Code of Civil Procedure § 877.6.

## ANALYSIS

A court sitting in diversity has discretion to determine that a settlement is in good faith pursuant to California Code of Civil Procedure Section 877. *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1064 (9th Cir. 2011). The good faith provision of section 877 mandates that the courts review agreements purportedly made under its aegis to insure that such settlements appropriately balance the contribution statute's dual objectives." *Tech-Bilt, Inc. v. Woodward-Clyde & Assocs.*, 38 Cal. 3d 488 (Cal. 1985). The good faith provision further provides that when a settlement is determined

3

by a court to have been made in good faith, the settlement "bar[s] any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." CAL. CIV. PROC. CODE § 877.6(C). The party applying for a good faith settlement determination is required to give notice of its application to all other parties and to the court. CAL. CIV. PROC. CODE § 877.6(a). "A settling tortfeasor's section 877.6, subdivision (c) good faith settlement determination discharges indemnity claims by other tortfeasors, whether or not named as parties, so long as the other tortfeasors were given notice and an opportunity to be heard." *Gackstetter v. Frawley*, 135 Cal. App. 4th 1257, 1273 (Cal. App. 2d Dist. 2006).

To determine whether a settlement was entered into in good faith, the Courts consider the *Tech-Bilt* factors which include:

> (1) a rough approximation of plaintiff's total recovery and the settler's proportionate liability; (2) the amount paid in settlement; (3) a recognition that a settler should pay less in settlement than if found liable after trial; (4) the allocation of the settlement proceeds; (5) the settling party's financial condition and the availability of insurance; and (6) evidence of any collusion, fraud or tortious conduct between the settler and the plaintiff aimed at requiring the non-settling parties to pay more than their fair share.

*Tech-Bilt, Inc.,* 38 Cal.3d at 499. "Once there is a showing made by the settlor of the settlement, the burden of proof on the issue of good faith shifts to the nonsettlor who asserts that the settlement was not made in good faith." *City of Grand Terrace v. Superior Court*, 192 Cal. App. 3d 1251, 1261 (1987). A party opposing the settlement agreement "must demonstrate . . . that the settlement is so far 'out of the ballpark' in relation to these factors as to be inconsistent with the equitable objectives of the statute." *Tech-Bilt, Inc.,* 38 Cal.3d at 499-500.

**1.     Terms of the Chevron-Burtch Trucking Settlement Agreement**

Burtch Trucking has agreed to pay $150,000.00 to settle all of Chevron's claims as to Burtch Trucking. (Doc. 137 at 4). As calculated by Mr. Wittenbrink, a rough approximation of Burtch Trucking's proportionate liability is at least $179,567.23 in estimated clean-up costs. Wittenbrink Decl. at 6. This represents less than 1% of the $16,830,000.00 in total clean up costs. Wittenbrink Decl. at ¶ 3. Thus, the settlement amount is within the ballpark of Burtch Trucking's alleged proportionate liability.

Further, the proposed settlement with Burtch Trucking was reached after extensive settlement negotiations. Chevron and Burtch Trucking negotiated the settlement for approximately fifteen (15) months. During that time period, the parties communicated no less than five (5) times via telephone and exchanged no less than nine (9) emails regarding settlement. Finally, Burtch Trucking represents that it does not oppose the motion for good faith settlement. Carlson Decl. at ¶ 5, Doc. 137-3.

**2.    The Chevron-Burtch Trucking Settlement is in Good Faith**

The Court has reviewed Chevron's motion for good faith settlement, its supporting declarations, the *Tech-Bilt* factors, and the lack of opposition. The Court finds that the settlement between Burtch Trucking and Chevron was reached in good faith under California Code of Civil Procedure section 877.6. All named Defendants received notice of the motion, the accompanying settlement amount, and the supporting declarations. The parties have now had an adequate opportunity to perform a complete analysis of the settlement agreements and express any objections or opposition. To date, no party has filed objections. Further, at the hearing on the motion, no party objected to the settlement. The motion is unopposed, and no party has demonstrated that the settlement agreement is unreasonable or inconsistent with the equitable objectives of Section 877.6. Moreover, no party has objected to the formula or calculations by Mr. Wittenbrink to determine the basis of liability for Chevron or Burtch Trucking.

Next, the Chevron-Burtch Trucking settlement satisfies the *Tech-Bilt* factors. One of the most important *Tech-Bilt* factors is the proportion of liability. *Toyota Motor Sales U.S.A., Inc. v. Super. Ct.*, 220 Cal. App. 3d 864, 871 (1990). A "settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be." *Torres v. Union Pac. R. R. Co.*, 157 Cal. App. 3d 499, 508 (1984). The $150,000.00 Burtch Trucking has agreed to pay is proportionate to Burtch Trucking's potential liability of $179,567.23 as calculated by Mr. Wittenbrink. Further, the Court has considered that the settlement amount is less than the amount Burtch Trucking may have paid had it been found liable at trial. *Tech-Bilt, Inc.*, 38 Cal. 3d at 499. With regard to the remaining *Tech-Bilt* factors, in consideration of Burtch Trucking's financial condition and insurance policy limits, Burtch Trucking does not dispute that it has sufficient finances and insurance to pay more than the settlement amount on any judgment that may be entered against it at the time of

trial. Finally, no evidence suggests that the Chevron-Burtch Trucking settlement is a result of collusion, fraud, or tortious conduct. Indeed, the Chevron-Burtch Trucking settlement was initiated during an arms-length, informed, and independent settlement negotiation. The settlement agreement was reached early in the litigation and the settlement eliminates any additional costs of discovery, motions, and trial preparation as to the Settling Party.

Accordingly, the Chevron-Burtch Trucking settlement agreement is a culmination of good faith negotiations, and no evidence has been presented to show the amount of settlement or any other matter in connection with the settlement is aimed at harming the non-settling defendants. Pursuant to Section 877.6, this Court recommends that Chevron's settlement agreement with Burtch Trucking is in good faith.

**FINDINGS AND RECOMMENDATIONS**

For the reasons discussed above, this Court **RECOMMENDS**, that

1. Chevron's settlement with Burtch Trucking, Inc. should be **GRANTED** as entered into in good faith within the meaning of California Code of Civil Procedure section 877.6 and therefore any and all claims for equitable comparative contribution, and partial and complete comparative indemnity, based on comparative negligence or comparative fault, against Burtch Trucking Inc. be forever barred pursuant to California Code of Civil Procedure §877.6 (c). (Doc. 137);

2. Chevron's claims against Burtch Trucking Inc. should be **DISMISSED** with prejudice;

3. Counsel for Chevron is **DIRECTED** to serve a copy of this Order on all named defendants.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fifteen (15) days after being served with these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C). The parties

are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **March 4, 2013**                      /s/ **Barbara A. McAuliffe**
                                                                        UNITED STATES MAGISTRATE JUDGE