UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY, et al., <br><br>Plaintiffs, <br><br>v. <br><br>BKK CORPORATION, et al., <br><br>Defendants. <br>_____/ | Case No. 1:11-cv-1396 LJO BAM <br><br>ORDER RE: PLAINTIFFS'/COUNTER-DEFENDANTS' MOTION TO DISMISS <br><br>(Doc. 173) |

Currently pending before the Court is Plaintiffs/Counter-Defendants Chevron Environmental Management Company and Chevron U.S.A., Inc.'s (collectively "Chevron's") motion to dismiss filed on August 7, 2013. Chevron moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Defendant/Counter-Claimant M.P. Environmental Services, Inc.'s ("MPES's") counterclaim for cost recovery under Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a). MPES has filed an opposition to the motion, and Chevron has filed a reply.

The Court has considered the parties' submissions, and for all the reasons set forth below (1) VACATES the September 6, 2013 hearing set for this matter pursuant to Local Rule 230(g); and (2) GRANTS Chevron's motion to dismiss with leave to amend.

I.     BACKGROUND

This case concerns the environmental clean-up of the EPC Eastside Disposal Facility or Farm ("the EPC Site"), a landfill located 15 miles northeast of Bakersfield, California. (Doc. 169 ¶¶ 1, 13.)

The EPC Site operated a waste disposal facility from 1971 to 1985, during which it received millions of gallons of waste. (Id. ¶ 14.)

In 2005, the California Department of Toxic Substances Control ("the DTSC") and Chevron entered into an Imminent and Substantial Endangerment Determination and Consent Order ("Consent Order") regarding the EPC Site. (See Doc. 169-2.) The Consent Order identified Chevron as a party "who arranged for the disposal of hazardous substances at the [EPC] Site, and is responsible under the [law] for the investigation and remediation of the release or threatened release of hazardous substances into the environment at or from the Site." (Id. ¶ 2.1.1.) The Consent Order also required Chevron to draft a remedial action plan ("RAP") to address and remedy the release of hazardous substances at the EPC Site. (Id. ¶ 5.6.)

The DTSC approved Chevron's RAP in February 2008. (Doc. 169 ¶ 15.) Under the approved plan, remedial efforts "will be substantial." (Id.) Remedial efforts will include constructing a soil cap to prevent infiltration and run-off of precipitation; inspecting the soil cap for erosion and disturbance annually; testing, sampling, and monitoring groundwater; monitoring surface emissions and water; and likely demolishing other structures. (Id.)

On August 22, 2011, Chevron initiated this action against several defendants who arranged for disposal or transported hazardous substances to the EPC Site in the past. (Doc. 1 ¶ 6.) Chevron seeks to recover from these defendants some of the costs associated with the clean-up effort of the EPC Site. Chevron asserts three claims to this end: (1) recovery of response cost under CERCLA Section 107(a); (2) declaratory relief under CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2); and (3) contribution and/or indemnity for response costs under California Health and Safety Code Section 25363(e). (See Doc. 169 at 6-9.)

MPES, one of the many defendants in this case,[1] filed its answer on July 18, 2013. (Doc. 172.) MPES denies Chevron's allegations and asserts the following three counterclaims against Chevron: (1) recovery of its response cost under CERCLA Section 107(a); (2) contribution under CERCLA Section

---

[1] Most of the original defendants have since entered into settlement agreements with Chevron. The only defendants remaining in this action are Energy Production & Sales Co., Golden Gate Petroleum Co., Kern Front Sec.-35 Partners, L.W. Potter, Inc., MP Vacuum Truck Service, and MPES.

113(f), 42 U.S.C. § 9613(f); and (3) contribution under California Health and Safety Code Section 25363(c). (See Doc. 172 at 10-13.)

In response, Chevron filed the instant motion to dismiss on August 7, 2013. (Doc. 173.) As noted above, Chevron moves pursuant to Rule 12(b)(6) to dismiss MPES's counterclaim for recovery of response costs under CERCLA Section 107(a). MPES filed an opposition to the motion on August 23, 2013, and Chevron filed a reply on August 30, 2013. (Docs. 176-77.)

## II.   LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the legal sufficiency of a claim presented in the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Where there is a "lack of a cognizable legal theory" or an "absence of sufficient facts alleged under a cognizable legal theory," dismissal under Rule 12(b)(6) is proper. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). Naked assertions accompanied by "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. See Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A complaint] must contain sufficient allegations of underlying facts to give fair notice . . . [to] the opposing party . . . [and] must plausibly suggest an entitlement to relief").

In deciding a motion to dismiss under Rule 12(b)(6), the court accepts the factual allegations of the complaint as true and construes the pleadings in the light most favorable to the party opposing the motion. Ass'n for Los Angeles Deputy Sheriffs v. County of Los Angeles, 648 F.3d 986, 991 (9th Cir. 2011). However, the court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

Nor is the court required to accept as true allegations that are conclusory or the product of unwarranted deductions of fact. Id. Finally, if the court concludes that dismissal is warranted under Rule 12(b)(6), the dismissal should be with leave to amend unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." Cook, Perkiss & Liehe, Inc. v. Northern California Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir. 1990).

## III. DISCUSSION

### A. Failure to State a Claim

The issue here is whether MPES alleges sufficient facts to support a plausible counterclaim for recovery of response costs under CERCLA Section 107(a). Chevron argues that MPES's allegations are insufficient because MPES does not allege any facts showing that it has actually incurred response costs in connection with the EPC Site. MPES counters that it does not need to have incurred response costs in order to obtain relief under Section 107(a). MPES argues that it may obtain declaratory relief for *future* response costs. MPES also notes that response costs recoverable under Section 107(a) may include site assessment costs and attorneys' fees.

The Court agrees with Chevron. Section 107(a) "authorizes suits against certain 'statutorily defined "responsible parties" [RPRs] to recover costs incurred in cleaning up hazardous waste disposal sites." Kotrous v. Goss-Jewett Co. of Northern Cal., 523 F.3d 924, 929 (9th Cir. 2008) (quoting Pinal Creek Group v. Newmont Mining Corp., 118 F.3d 1298, 1300 (9th Cir. 1997)). Under Section 107(a), RPRs are specifically liable for:

> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
>
> *(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan*;
>
> (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and
>
> (D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.

42 U.S.C. § 9607(a)(4)(A)-(D) (emphasis added). Here, there is no question that Chevron qualifies as an RPR under CERCLA. MPES, however, does not allege any facts showing that it has incurred any

necessary response costs consistent with a national contingency plan for which Chevron is responsible for under Section 107(a)(4)(B).[2] Nor, for that matter, does MPES allege that it has incurred any other type of cost, damage or injury specified in Section 107(a)(4). MPES therefore fails to state a plausible counterclaim under Section 107(a).

MPES's arguments to the contrary are wrong and misleading. First, despite what MPES would have the Court believe, a plaintiff cannot assert a claim under Section 107(a) to recover response costs *arising solely in the future*. Section 107(a) "permits an action for response costs 'incurred' - not 'to be incurred.'" In re Dant & Russell, Inc., 951 F.2d 246, 249 (9th Cir. 1991). "Under CERCLA's scheme . . . response costs may not be recovered when there has been no commitment of resources for meeting these costs." Id. Instead, CERCLA envisions that "*before suing*, CERCLA plaintiffs will spend some money responding to an environmental hazard." Id. (emphasis added). "They can *then* go to court and obtain reimbursement for their *initial outlays* . . . ." Id. (emphasis added). See Stanton Rd. Assocs. v. Lohrey Enters, 984 F.2d 1015, 1021 (9th Cir. 1993) (reversing an award of damages for response costs arising solely in the future).

The availability of declaratory relief under CERCLA Section 113(g)(2) does not change this in any way. The Ninth Circuit has made it perfectly clear that declaratory relief under Section 113(g)(2) is available only if liability for *past* response costs is *first* established under Section 107(a):

> The declaratory judgment mandated by section 113(g)(2) pertains to liability for response costs. Such liability for response costs must refer to the response costs sought in the initial cost-recovery action, given that the sentence later refers to any subsequent action or actions to recover further response costs. Therefore, if a plaintiff successfully establishes liability for the response costs sought in the initial cost-recovery action, it is entitled to a declaratory judgment on present liability that will be binding on future cost-recovery actions.

---

[2] MPES's allegations with respect to this counterclaim read, in pertinent part:

> MPES is informed and believes that it did not arrange for disposal of any hazardous substances at the EPC Site, that it was not an owner or operator of the EPC Site at a time when hazardous substances were disposed upon the EPC Site, it is not liable under CERCLA, and that it did not select the EPC Site for disposal or treatment of hazardous substances. However, if it is determined that there have been releases of hazardous substances upon the EPC Site for which MPES is liable in any way, Chevron is liable to MPES under section 107 of CERCLA, 42 U.S.C. § 9607, for all response costs incurred or to be incurred by MPES related to the EPC Site.

(Doc. 172 ¶ 13.)

> Here, [the plaintiff] has failed to establish present liability because of its conceded failure to comply with the NCP but seeks a declaratory judgment on future liability. Section 113(g)(2), however, does not provide for such relief. . . . In section 113(g)(2), Congress specified a mechanism whereby a declaration of liability for costs already incurred has preclusive effect in future proceedings as to costs yet to be incurred.  If Congress had intended for a declaration of future liability to be available, it could have provided that the court shall enter a declaratory judgment on liability for *further* response costs.  That it did not leads us to conclude that declaratory relief is available only if liability for past costs has been established under section 107.
>
> * * *
>
> Where, as here, the plaintiff fails to establish section 107 liability in its initial cost-recovery action, no declaratory relief is available as a matter of law.

City of Colton v. Am. Promotional Events, Inc.-West, 614 F.3d 998, 1007-08 (9th Cir. 2010) (citations and internal quotation marks omitted).[3]  See also Union Station Assocs. LLC v. Puget Sound Energy, Inc., 238 F. Supp. 2d 1226, 1230 (W.D. Wash 2002) (concluding that absent a valid claim for recovery of past response costs under Section 107(a), claims for declaratory relief under Section 113(g)(2) must fail); Coppola v. Smith, 2013 U.S. Dist. LEXIS 43010 at *25 (E.D. Cal. Mar. 26, 2013) (same).  Thus, even assuming that MPES alleged a counterclaim for declaratory relief under Section 113(g)(2) in its pleadings, which it did not, its counterclaim would still fail in the absence of any allegation that it has actually incurred response costs in the past that are recoverable under Section 107(a)(4)(B).

Finally, it may be true, as MPES argues, that site assessment costs and attorneys' fees that are closely tied to actual clean-up efforts are recoverable response costs under Section 107(a).  See Key Tronic Corp. v. United States, 511 U.S. 809, 820 (1994) (attorneys' fees may be recovered in certain circumstances under CERCLA); Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 892 (9th Cir. 1986) (certain testing expenses may be recovered under CERCLA).  Nevertheless, it still remains that MPES does not allege that it has actually incurred any recoverable response costs, whether in the form of testing expenses, site assessment costs, or attorneys' fees.  Absent such allegations, MPES does not state a plausible counterclaim under Section 107(a).

---

[3] It is troubling that MPES does not even acknowledge City of Colton in its opposition papers, a recent Ninth Circuit case that is directly on-point and binding on this Court.  Instead, MPES urges the Court to follow an out-of-circuit district court case decided in 1996.  The Court reminds MPES's counsel of their obligations under Federal Rule of Civil Procedure 11(b).  This Court's limited time and resources should not be wasted on unsupportable legal arguments.

**B.     Leave to Amend**

Chevron argues that MPES's claim under Section 107(a) should be dismissed with prejudice. Chevron insists that to the extent that MPES seeks to recover costs associated with the clean-up effort surrounding the EPC Site, its claim is properly characterized as one for contribution under CERCLA Section 113(f), a claim that MPES already alleges and a claim that Chevron does not seek to dismiss. Moreover, Chevron insists that a plaintiff cannot simultaneously maintain a claim under both Section 107(a) and Section 113(f). As support for this position, Chevron quotes the following language from United States v. Atlantic Research Corp., 551 U.S. 128, 139 (2007):

> Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from *an action instituted under § 106 or § 107(a)*. . . . But by reimbursing response costs paid by other parties, the PRP has not incurred its own costs of response and therefore cannot recover under § 107(a). As a result, though eligible to seek contribution under § 113(f)(1), the PRP cannot simultaneously seek to recover the same expenses under § 107(a).

(Doc. 177 at 2) (emphasis in Chevron's brief).

At this time, the Court cannot say whether MPES's alleged costs are properly characterized as response costs recoverable under Section 107(a) or contribution-type costs recoverable under Section 113(f). As explained above, MPES's allegations regarding its costs are entirely lacking. While it is likely that MPES's alleged costs are contribution-type costs recoverable under Section 113(f), MPES will be allowed an opportunity to allege otherwise, if it can do so in good faith. See Cook, Perkiss & Liehe, 911 F.2d at 247 (leave to amend should be given unless the court determines that the pleading could not possibly be cured).

**IV.    CONCLUSION AND ORDER**

For all the reasons discussed above, the Court:

1. VACATES the September 6, 2013 hearing scheduled for this matter;
2. GRANTS Chevron's motion to dismiss with leave to amend; and
3. ORDERS MPES to file and serve any amended pleading it elects to submit in response to this order by no later than September 24, 2013. If MPES decides to file an amended pleading it shall do so (1) with its best efforts; and (2) only if it can, *in good faith*, cure the deficiencies identified in this order. It is unlikely that MPES will be given another

opportunity to cure its pleadings with respect to this claim.  Finally, MPES is reminded of its obligations under Rule 11(b).

IT IS SO ORDERED.

   Dated:   **September 3, 2013**                              **/s/ Lawrence J. O'Neill**
                                                                            UNITED STATES DISTRICT JUDGE